UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:11 CR 133 |
| | ) | |
| THOMAS R. PHILPOT, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Defendant Thomas R. Philpot has filed a motion requesting that this court order him released on bond pending his appeal. (DE # 133.) The government filed a response in opposition. (DE # 136.) Defendant Philpot has not filed a reply. For the reasons that follow, his motion will be denied.

**I.     BACKGROUND**

The indictment in this case charged Philpot with three counts of mail fraud in violation of 18 U.S.C. § 1341 and two counts of theft from a federally-funded program in violation of 18 U.S.C. § 666(a)(1)(A). To summarize in the briefest terms, the indictment charged that Philpot devised and engaged in a scheme to defraud the State of Indiana and the United States by supplementing his pay with bonus payments to himself out of funds that came from a federal program, without first obtaining the county fiscal body's approval of the payments, as was required by Indiana law. The three mail fraud charges were based on forms submitted to the State to obtain reimbursement from the federal program funds, and the two theft counts were based on Philpot's actual receipt of the bonus payments. The jury found Philpot guilty of all five charges, but the court granted

Philpot's motion for a judgment of acquittal on one mail fraud and one theft charge, counts 1 and 4. (DE # 125.) On February 21, 2013, Philpot was sentenced on counts 2, 3 and 5 to a term of imprisonment of 18 months on each count to be served concurrently, and a two-year term of supervised release on each count to be served concurrently. (DE # 130 at 2-3.) The court ordered Philpot to report to begin serving his term of imprisonment on April 3, 2013 (*Id*. at 3), but a recent newspaper article states that he reported early, and the Bureau Of Prisons ("BOP") website inmate locator tool[1] indicates that this is true.

## II.     STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 3143, a defendant can be released on bond pending appeal if a judicial officer finds 1) by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the community, and 2) that the appeal is "not for the purpose of delay and raises a substantial question of law or fact likely to result in" i) reversal, ii) an order for a new trial, iii) a sentence that does not include a term of imprisonment, or iv) "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3134(b).

## III.    ANALYSIS

The government concedes that Philpot presents neither a flight risk nor a danger to the community. (DE #136 at 2, n. 1.) Philpot was not convicted of a violent crime and

---

[1] http://www.bop.gov/iloc2/LocateInmate.jsp, accessed March 20, 2013.

has no criminal history. There is ample evidence of his strong ties to his family and to the community. As mentioned above, he reported to the Bureau of Prisons early. Whether he did so voluntarily or pursuant to direction from the BOP, this also indicates he is not a flight risk. The court finds by clear and convincing evidence that Philpot does not present a flight risk or a danger to the community.

There has also not been any suggestion that Philpot's appeal is for the purpose of delay. Accordingly, the focus of the analysis is whether Philpot shows that his appeal will raise a substantial question of law or fact that is likely to result in a new trial or reversal. The court must first decide if a proposed argument raises a "substantial question" of law or fact. Under Seventh Circuit case law interpreting § 3143(b), a "substantial question" is one that can be described as "a toss up or nearly so," "a close question," or "one that could be decided the other way." *United States v. Shoffner,* 791 F.2d 586, 589 (7th Cir. 1986); *United States v. Greenberg,* 772 F.2d 340, 341 (7th Cir. 1985); *United States v. Inks,* 670 F. Supp. 829, 830 (N.D. Ill. 1987). If the court finds that an argument raises a substantial question it must then decide whether the question is one that is "so integral to the merits" that if it was decided in the defendant's favor, the appellate court is more likely than not to reverse the conviction or order a new trial. *United States v. Bilanzich*, 771 F.2d 292, 298-299 (7th Cir. 1985) ("whether a question is 'substantial' defines the *level of merit* required in the question presented and 'likely to result in reversal or an order for a new trial' defines the *type of question* that must be presented") (emphasis in original) (internal quotations omitted). In other

words, this court does not have to find it likely that it has committed error, instead the question is how significant the substantial question (if one is raised) is to the ultimate disposition of the appeal. *Id*. at 299.

Philpot's arguments are fairly simple and do not require a lengthy analysis. First, near the end of his memorandum Philpot makes three brief arguments, each of which he asserts is a substantial issue for appeal: 1) the court erred by not allowing him to re-open his case to call an additional witness, attorney John Dull; 2) the court erred by allowing the government to request an "advice of counsel" instruction after the deadline for submitting additional instructions and after Philpot had rested his defense case; and 3) the court's calculation of the loss amount was wrong and if Philpot's is right, his sentence would be much shorter and already served before his appeal is resolved. None of these three issues presents a "substantial question."

As to not allowing Philpot to re-open his case to call attorney Dull, Philpot argues that Dull's testimony "would have powerfully refuted the government's claim that Philpot somehow tricked Attorney Saks into providing an erroneous legal opinion." (DE # 133 at 7.) However, at trial the only reason that Philpot stated for wanting to re-open his case to call Dull was to "complete the advice of counsel story" and provide further evidence of his state of mind by showing that "at every turn, at every event . . . [he] sought to do the right thing." (Vol. 5, Trial transcript, DE # 88 at 10-11.) The court found Dull's proposed testimony on that issue irrelevant because at the

point Philpot consulted Dull the offense conduct charged in the indictment had been completed.

This decision does not present a close question that could go either way. The argument that Philpot is making—that Dull's testimony was important for a reason that Philpot didn't explain at trial—would require the Court of Appeals to find that this court committed plain error by not ascertaining that purpose for Dull's testimony. Not only is that not a close, and so not substantial, question, that difficult standard of review on appeal makes it unlikely for there to be a reversal or new trial.

Next, Philpot argues that it was error for the court to allow the government to submit an advice of counsel after he had rested his case and after the deadline the court set for submitting additional instructions. This is the argument as Philpot states it, but the real issue is whether the court erred by giving the instruction, not whether there was error in allowing the government to request it. Despite deadlines for submitting additional instructions, established so that trials can proceed in an orderly fashion, it is common for parties to request additional instructions as late as during the instruction conference, and Philpot had notice that the government likely would request the instruction. On the fourth day of trial, August 23, 2012, before Saks testified, the government told the court that Philpot had put Saks' opinion letter in evidence to:

> show Mr. Philpot's state of mind. Therefore, they are offering a reliance of counsel defense. . . . Under the instruction that I believe the Court will give in this case, Mr. Philpot had to make a complete and accurate disclosure of all the relevant facts in the rendering of that opinion.

5

(Vol. 4, Trial Transcript, DE # 90 at 4, l. 12-19.) The advice of counsel instruction was warranted by the evidence, and the court could have included it in its final instructions to the jury even if the government had not requested it. Simply put, the court did not err by giving an instruction which correctly stated the law and was warranted by the evidence. Philpot's argument that the court should not have allowed the government to request the instruction after the deadline for submitting additional instructions does not present a substantial question.

Philpot's last brief argument is that the court's loss calculation was incorrect, resulting in a four-level increase to his guideline sentencing range, because the court did not give him credit for paying back, before the government began its criminal investigation, the bonus payments he had taken. (DE # 133 at 8.) The time when the United States began its criminal investigation is not dispositive. The commentary to U.S.S.G. § 2B1.1, as relevant here, informs the court to give credit for loss amounts paid back to the victim "before the offense was detected. The time of detection of the offense is . . . the time the offense was discovered by a victim or government agency." U.S.S.G. § 2B1.1, cmt. n. 3(E)(i) (2012).

Philpot paid the money back after consulting John Dull, who opined that the bonus payments Philpot took were improper and should be paid back. Dull at the time was the attorney for the Lake County Commissioners, meaning that Lake County, a victim, knew of the loss before Philpot paid it back. At Philpot's sentencing hearing Dull testified that after Philpot consulted him regarding the legality of the bonus

payments, Philpot's repayment wasn't truly voluntary because the State Board of Accounts would have otherwise sued Philpot for repayment. (Sentencing transcript, DE # 139 at 24-25; 34.) There is no close question raising a substantial issue that the court should have credited Philpot for paying back the bonuses.

This brings the court to Philpot's two main arguments. Philpot argues that two subtantial issues he will raise on appeal are that his conviction resulted from improper and prejudicial comments made by the prosecutor during closing argument, and that in any event, the evidence is not sufficient to sustain his conviction on counts 2, 3 and 5. The court has already given thorough consideration to these same arguments in the context of Philpot's motion for a judgment of acquittal and/or a new trial. For these to be substantial issues, this court must believe that they are close questions which a reasonable jurist could have decided the other way. *Shoffner*, 791 F.2d at 589. The court does not believe that to be the case here.

First, the improper remarks during closing were: 1) that prior to 2008 Philpot had notice of the statute at issue because of cooperative agreements he signed; and 2) that Philpot asked attorney Saks for a legal opinion only after Council President Chistina Cid began raising questions about the bonus payments.[2] The court analyzed these

---

[2] It should be made clear that the court does not believe the government's remarks were improper in the sense that the government knowingly misstated the evidence. Instead, as to the cooperative agreements, the government was arguing for an inference to be drawn which the court believes is too tenuous. As to the timing of the Cid questions/Saks consultation, it appears that the government misunderstood the evidence. *See* DE # 125 at 28-29. This confusion is understandable, given the highly coincidental timing of Cid's questions and Philpot's consultation with Saks.

remarks using the factors from *Darden v. Wainwright*, 477 U.S. 168 (1986), and, in short, found that the remarks had not caused unfair prejudice to Philpot. The counts on which the conviction stands resulted from conduct after Philpot knew of the statute, making the cooperative agreements irrelevant; and when the comments about Cid's questions/Saks' consultation were made, Philpot objected that the government was misstating the evidence, that Cid's acts were after the consultation, and the court reminded the jurors of its admonitions regarding counsels' arguments. (Vol. 5, Trial transcript, DE # 88 at 73.) In light of the strength of the evidence against Philpot, the court did (and does) not believe these remarks were unduly prejudicial.

Philpot argues now that for Philpot to be convicted on the counts involving conduct that occurred after 2008, the jury had to believe that his consultation with Saks was a sham; thus, the prosecutor's repeated emphasis that the cooperative agreements had given Philpot notice of the statute since 2004, along with the suggestion that he consulted Saks only after Cid started raising "heck" about the bonuses, unfairly bolstered the notion that the consultation was a sham, making this a close question that could be decided either way. (DE # 133 at 6-7.) The court disagrees.

The statute at issue in this case provided in plain terms that the funds at issue could "not, without the approval of the county fiscal body, be used to increase or supplement the salary of an elected official." Ind. Code § 31-25-4-23(c). Philpot asked Saks to give him a legal opinion, as quickly as possible, whether there had been statutory compliance. Saks, who had a longstanding personal and professional

relationship with Philpot, opined that because the County Council had approved a general budgetary line item for "supplemental pay"—used for all bonus payments, not just Philpot's—the county fiscal body had approved using the finds to supplement Philpot's salary.

To be blunt and clear, the argument that Philpot reasonably relied on that opinion, and so did not have fraudulent intent, was for the jury to consider, but carries no weight in terms of post-verdict analysis. Philpot is an attorney, and the statutory requirement is not complex. The jury could, and did, determine that it was not reasonable for Philpot to accept Saks' opinion, and instead merely obtained and used it as a pretext to show compliance with the law. As the court stated in ruling on Philpot's motion for aqquittal/new trial:

> Philpot knew there was an Indiana statute stating that IV-D incentive funds "may not, without the approval of the county fiscal body, be used to increase or supplement the salary of an elected official." Ind. Code § 31-25-4-23(c).
> 
> An extremely short disposition of Philpot's motion can be made based on a consequence from this that he does not directly address: the fact that his knowledge of the statute is, by itself, sufficient evidence from which a reasonable jury could find, beyond a reasonable doubt, that he knew he was not entitled to the supplemental payments and so had the necessary criminal knowledge and intent.

(DE # 125 at 11-12.) Thus, the court does not think that Philpot has shown that he presents a substantial issue.

This observation is also the short answer to Philpot's remaining argument: that his appeal presents a substantial issue as to whether there was sufficient evidence to

9

convict him. He argues that his conviction results primarily from conflicting and speculative testimony provided by attorney Saks, and speculative evidence of a funds transfer request that Philpot may have known about, which possibly was part of a scheme to manufacture additional Council "approval" of the bonus payments. Accepting that characterization of those two aspects of the evidence,[3] the argument nevertheless ignores the elephant in the room: the case against Philpot is simple at heart. The statutory language at issue is so plain that a layperson can understand it, and Philpot, an attorney, disregarded it and awarded himself supplemental pay without making any effort to request the Lake County Council to approve those payments. That alone is enough evidence for his conviction, and so no substantial question is presented as to the sufficiency of the evidence.

IV. CONCLUSION

Because the court has found that none of the proposed issues for appeal raises a substantial question, it does not need to determine whether any of these issues is of the type that would be likely to result in a reversal or new trial. Consequently, Philpot's motion to be released on bond pending appeal is **DENIED**. (DE # 133.)

                                          **SO ORDERED.**

Date: March 26, 2013

                                     s/ James T. Moody
                                     JUDGE JAMES T. MOODY
                                     UNITED STATES DISTRICT COURT

---

[3] The court points out, however, that it was completely reasonable for the jury to infer that Philpot, the head of the office, knew of the funds transfer request.